UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES TRAXLER,

           Petitioner,           Case No. 1:17-cv-122

v.                                     Honorable Gordon J. Quist

SHERRY BURT,

           Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner James Traxler is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility in Muskegon, Michigan. On October 2, 2012, a Newaygo County Circuit Court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, and felony firearm, MICH. COMP. LAWS § 750.227b. On November 5, 2012, the court sentenced Petitioner to a term of imprisonment of twenty to eighty years for the second-degree murder conviction, consecutive to a term of two years for the felony firearm conviction.

On March 30, 2017, Petitioner filed his amended habeas corpus petition raising three grounds for relief, as follows:

    I.    [PETITIONER] WAS DEPRIVED OF THE RIGHT TO PRESENT A DEFENSE AND EFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PROPERLY RAISE SELF DEFENSE.

    II.   INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO MOVE TO EXCLUDE EXPERT TESTIMONY.

III.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

(Am. Pet., ECF No. 11, PageID.154-157.) Respondent has filed an answer to the petition (ECF No. 15), stating that the grounds should be denied because issue I is procedurally defaulted and meritless, and issues II and III are simply meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

On June 25, 2011, Petitioner shot his neighbor three doors down, Michael Boynton, point blank in the head, killing him. That is undisputed. Petitioner claims he suffered from post-traumatic stress disorder from his military service and a prior beating at the hands of Mr. Boynton, and that his perception of the events because of that disorder turned his action in pulling the trigger into self-defense. The jury did not agree.

Petitioner presented the testimony of Psychologist James VanTreese in support of his claims that: (a) he was not criminally responsible for shooting his neighbor; and (b) the shooting was justified. (Trial Tr. V, ECF No. 16-13, PageID.1043-1149.) The prosecutor presented the testimony of Psychologist Margo Gilbert in support of his claim that Petitioner was criminally responsible and the shooting was not justified. (Trial Tr. VI, ECF No. 16-14, PageID.1267-1347.)

Petitioner testified that Michael Boynton was coming at him and, so fresh on the heels of a brutal beating by Mr. Boynton, Petitioner feared for his life when he pulled the trigger. (Trial Tr. VI, ECF No. 16-14, PageID.1189-1193.) That may have been what was going on in Petitioner's head, but there was an eyewitness to the incident who told a different story.

Eric Carrier, the boyfriend of a Maria Fifield who lived in a house between Mr. Boynton and Petitioner's homes, was in Ms. Fifield's backyard at the time of the shooting, only thirty to forty yards away. (Trial Tr. I, ECF No. 16-9, PageID.650-670.) He saw Petitioner next to and slightly behind Mr. Boynton, as Mr. Boynton sat on his riding mower on his property.[1] (*Id.*) According to Mr. Carrier, as Mr. Boynton sat on his mower, Petitioner raised up a gun and shot him in the head. (*Id.*)

Mr. Carrier and Ms. Fifield immediately left the scene in their vehicle to report the incident at the state Police Post. (*Id.*) Petitioner called 911 to report the incident as well. (*Id.*, PageID.644-648; Trial Tr. VI, ECF No. 16-14, PageID.1236-1240.) When police and emergency medical personnel arrived, Mr. Boynton was dead. (*See, e.g.,* Trial Tr. II, ECF No. 16-10, PageID.703-706; 711, 714, 761, 763-764, 770.) The position of his body on the mower, however, seemed more consistent with Mr. Carrier's version of events than Petitioner's version. (*Id.*) That is why the expert testimony was so important.

---

[1] Petitioner acknowledged that Mr. Boynton was on his own property at the time of the incident. (Trial Tr. VI, ECF No. 16-14, PageID.1225.) Although there were homes between Petitioner's home and Mr. Boynton's home, their lots were deeper and had common boundaries.

3

The trial court instructed the jury that for Petitioner to act in self-defense, he "must have honestly and reasonably believed that he was in danger of being killed or seriously injured." (Trial Tr. VII, ECF No. 16-15, PageID.1428.) It would be difficult to conclude that Petitioner honestly and reasonably believed himself to be in danger based on Mr. Carrier's disinterested description of the shooting. Petitioner's description of the events—that Mr. Boynton lunged at him causing Petitioner to fear for his life—only appears "reasonable" if what he perceived was understandably different than what Mr. Carrier perceived. Petitioner's expert's explanation that Petitioner was in a trauma-induced disassociative state (Trial Tr. V, ECF No. 16-13, PageID.1071-1077), provided the foundation necessary for the jury to conclude that Petitioner's description may have been honest and reasonable. Thus, Petitioner's claim that he acted in self-defense and that he was not criminally responsible were inextricably interwoven.

The jury also heard testimony from Petitioner's wife and son, Mr. Boynton's girlfriend and son, two medical examiners, several first-responders, an emergency room physician and a psychologist (both of whom treated Petitioner), and roughly a half-dozen character witnesses for Petitioner. After all of that testimony, the trial court instructed the jury on several possible verdicts: not guilty; not guilty by reason of insanity; guilty but mentally ill; guilty of first-degree murder or the lesser-included offense of second-degree murder, both of which require a determination that the killing was not justified by self-defense; guilty of voluntary manslaughter; and guilty of felony firearm. (Trial Tr. VII, ECF No. 16-15, PageID.1424-1441.) It took the jury

about two hours to work its way through the complicated jury verdict form. (*Id.*, PageID.1444-1445.)

The court sentenced Petitioner on November 5, 2012. (Sentencing Tr., ECF No. 16-16.) For the second-degree murder conviction, the court imposed the greatest minimum sentence permitted by the sentencing guidelines: twenty years. (*Id.*, PageID.1455, 1457.)

Petitioner, with the assistance of appointed counsel, directly appealed his convictions. He raised two issues: (1) the trial court erred in permitting Dr. Gilbert to testify regarding Petitioner's competency and mental illness where the testimony did not meet the requirements of Michigan Rule of Evidence 702; and (2) trial counsel rendered ineffective assistance because he did not move to exclude Dr. Gilbert's testimony. (Appellant's Br., ECF No. 16-19, PageID.1507.) The first issue was raised as "nonconstitutional error." (*Id.*, PageID.1524.) In an opinion entered June 26, 2014, the Michigan Court of Appeals concluded that, under state law, Dr. Gilbert's testimony was properly admitted. (Mich. Ct. App. Op., ECF No. 16-19, PageID.1503-1505.) Because the evidence was admissible and properly admitted, the appellate court also concluded that counsel's failure to move to exclude the testimony did not constitute ineffective assistance. (*Id.*, PageID.1505.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. Petitioner raised the two issues he had raised in the court of appeals, plus one new issue: whether Petitioner was deprived of the right to present a defense and the effective assistance of counsel when trial counsel failed to raise the defense

5

of self-defense.  (Appl. for Leave to Appeal, ECF No. 16-20, PageID.1592-1594.)  The issue, as presented, was based on a fanciful view of the underlying facts and the events of the trial:

> Mr. Traxler was charged with murder in the death of Mike Boynton.  In response to this charge, he has always maintained his innocence.  At the time in question, Mr. Traxler was at his home when Boynton pulled up on his tractor. . . .  An argument erupted after Mr. Traxler told Boynton that he should pay the medical bills stemming from [Mr. Boynton's prior] assault [of Mr. Traxler].  Mr. Boynton became angry and lunged towards Mr. Traxler and tried to grab him.  The prior assault had left Mr. Traxler mentally shaken and the injuries sustained (broken shoulder) rendered Traxler physically defenseless against Boynton.  These injuries left Mr. Traxler feeling especially vulnerable.  He was now being attacked at his last place of refuge—his own home.  Fearing for his life, Mr. Traxler shot Mr. Boynton in self-defense.  Yet knowing all of this, counsel refused to legitimately pursue a defense of self-defense.

((*Id.*, PageID.1594-1595 (footnote omitted).)  The Michigan Supreme Court denied leave by order entered February 3, 2015.  (Mich. Order, ECF No. 16-20, PageID.1589.)

Shortly after the Michigan Supreme Court denied leave to appeal, Petitioner filed an application for habeas relief in the United States District Court for the Eastern District of Michigan.  Petitioner raised the three issues he had raised in his application for leave to appeal to the Michigan Supreme Court.  (Pet., ECF No. 1, PageID.6-9.)  The Court summarily dismissed the petition for failing to exhaust state court remedies with respect to the third issue which had been raised for the first time in the Michigan Supreme Court.  (Op. & Order, ECF No. 5.)

Petitioner then returned to the Newaygo County Circuit Court where he filed a motion for relief from judgment.  He raised two issues, the self-defense issue he had raised for the first time in the Michigan Supreme Court and a new issue: whether

6

appellate counsel rendered constitutionally ineffective assistance when he failed to argue the self-defense issue in Petitioner's appellate brief in the Michigan Court of Appeals.  (Mot., ECF No. 16-17, PageID.1461-1462.)  The trial court denied relief in a form order "due to a lack of merit in the issues presented." (Newaygo Cnty. Cir. Ct. Order, ECF No. 16-18, PageID.1501.)  Petitioner sought leave to appeal that order in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered October 2, 2015, and July 26, 2016, respectively. (Mich. Ct. App. Order, ECF No. 16-21, PageID.1671; Mich. Order, ECF No. 16-22, PageID.1747.)

Petitioner then returned to the United States District Court for the Eastern District of Michigan.  He filed a petition for habeas corpus and supporting brief raising the three issues identified above as Petitioner's habeas corpus issues.  (Pet'r's Br., ECF No. 6, PageID.112, 119, 123.)  The Eastern District Court entered an order transferring the case to this Court.  (Order, ECF No. 7.)  This Court directed Petitioner to submit an amended petition on the form.  (Order, ECF No. 10.) Petitioner filed his amended petition raising the issues now before the Court. (Am. Pet., ECF No. 11.)

II.   AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to

any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

   III.   <u>Failure to Present Self-defense as a Defense (Habeas Issues I & III)</u>

9

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel:   (1) did counsel's performance fall below an objective standard of reasonableness; and (2) did counsel's deficient performance prejudice the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard applies to appellate counsel as well as trial counsel; but, an appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner

must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington,* 562 U.S. at 105 (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009))*; see also Burt v. Titlow,* 571 U.S. 12, 13 (2013); *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011); *Premo v. Moore,* 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.; Jackson v. Houk,* 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington,* 562 U.S. at 102).

Here, the state court did not afford this Court much to defer to, other than the result. The issue was not raised until Petitioner's motion for relief from judgment. The trial court provided no meaningful analysis of the Petitioner's claims beyond noting that there was "a lack of merit in the issues presented." (Newaygo Cnty. Cir. Ct. Order, ECF No. 16-18, PageID.1501.) The Michigan Court of Appeals offered a little more substance in its denial of Petitioner's application for leave to appeal: "[Petitioner] alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and has not established that good cause should be waived." (Mich. Ct. App. Order, ECF No. 16-21, PageID.1671.)

11

Petitioner claims that his trial counsel rendered ineffective assistance because he failed to present self-defense as a defense to the charges against Petitioner. Petitioner claims further that his appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness for failing to raise self-defense. Petitioner's elaborate construct of constitutional challenges collapses on even cursory review of the trial transcript.

In his opening statement, Petitioner's trial counsel advised the jury that the evidence would show that, when Petitioner pulled the trigger he believed he was in threat of imminent bodily harm—that Petitioner believed he shot Boynton in self-defense. (Trial Tr. I, ECF No. 16-9, PageID.642.) Moreover, the prosecutor opened by stating that it was his burden "to prove that it was not in self-defense." (*Id.*, PageID.637.) The trial court also initially instructed the jurors that to convict Petitioner of first-degree or second-degree murder, they would have to find that the killing was not justified. (*Id.*, PageID.617-618.)

In closing arguments, the prosecutor acknowledged again that it was his burden to prove the killing was not justified by self-defense. (Trial Tr. VII, ECF No. 16-15, PageID.1378.) He argued strenuously against Petitioner's claim that the killing was so justified. The prosecutor specifically referenced Petitioner's claim of self-defense at least a dozen times in closing. (*Id.*, PageID.1376, 1378-1379, 1384-1385.) Similarly, in closing, defense counsel argued "[Petitioner] shot him in self-defense." (*Id.*, PageID.1396.) Defense counsel repeatedly emphasized the self-defense theory. (*Id.*, PageID.1396-1397, 1406.) Moreover, the trial court instructed

12

the jurors they must consider Petitioner's claim that he acted in lawful self-defense. The court gave four pages of self-defense instructions. (*Id*., PageID.1428-1431.)

Petitioner's claim that counsel somehow missed the defense of self-defense is entirely unsustainable on this record. Accordingly, the claims he attempts to build on that unsustainable premise are meritless. The Michigan Court of Appeals determination that Petitioner had failed to establish cause for, or prejudice from, counsel's failures to raise the issue is entirely reasonable as a matter of fact, on this record, and as a matter of clearly established federal law.

    IV.    <u>Trial Counsel's Ineffectiveness for Failing to Move to Exclude the Prosecution's Expert Testimony (Habeas Issue II)</u>

Petitioner also complains that his trial counsel was ineffective for failing to move to exclude the testimony of Dr. Gilbert. The Michigan Court of Appeals concluded that the testimony was admissible under Michigan Rule of Evidence 702, and that it was not properly excludable under Michigan Rule of Evidence 403 (Mich. Ct. App. Op., ECF No. 16-19, PageID.1503-1505.) Accordingly, the court of appeals found, any motion by counsel to exclude the testimony would have been futile (*Id*., PageID.1505).

Petitioner raised the issue regarding Dr. Gilbert's testimony as a state law issue. He expressly stated it was "nonconstitutional error." (Appellant's Br., ECF No. 16-19, PageID.1524.) The state appellate court's determination on the state law issue of the admissibility of the prosecutor's expert witness's testimony is conclusive. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted under state law "is no part of the federal

13

court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Moreover, the state appellate court's conclusion regarding the admissibility of the prosecutor's expert witness testimony also forecloses Petitioner's claim that his counsel was ineffective for failing to move to exclude it. Because there was no reason to exclude the evidence, a motion seeking that relief would have been meritless. The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer*, 264 F.3d at 676). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  March 14, 2018                                  /s/ Phillip J. Green
                                                        PHILLIP J. GREEN
                                                        United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).